IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS FERRERA,<br>AKA CHRIS FERREIRA,<br><br>Plaintiff,<br><br>v.<br><br>G. D. LEWIS, et al.,<br><br>Defendants. | No. C 11-00019 SBA (PR)<br><br>**ORDER OF SERVICE; AND DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL** |

Plaintiff, currently incarcerated in the Secure Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP"), brings the instant pro se civil rights action under 42 U.S.C. § 1983 seeking injunctive and declaratory relief and damages. Plaintiff has been granted leave to proceed in forma pauperis.

On February 7, 2013, the Court dismissed Plaintiff's complaint with leave to amend. (Docket No. 6.) Thereafter, Plaintiff filed his amended complaint. (Docket No. 8) Attached to his amended complaint is a motion for appointment of counsel. (Docket No. 8 at 27.)

In his amended complaint, Plaintiff names the following Defendants from PBSP: Warden G. D. Lewis; Chief Deputy Warden M. A. Cook; Lieutenants M. Randolph and R. S. Marquez; Correctional Officer M. Lujan; Correctional Counselor I T. Hutzell; and Correctional Counselor II N. Cox. Plaintiff also names the following Defendants from the California Department of Corrections and Rehabilitation (CDCR), including members from the Office of Correctional Safety ("OCS") -- the CDCR's gang intelligence unit -- as well as the Special Services Unit ("SSU") -- the CDCR agents that take part in gang validation[1]: OCS Chairperson Keri Berhler; OCS Reviewer Everett W. Fischer; OCS Member Bryan Kingston; Chief of Inmate Appeals N. Grannis; and Director M. Cate. Finally, Plaintiff names High Desert State Prison ("HDSP") "Sergeant or Correctional Officer" B. Handley.

---

[1] To validate a prisoner as an associate or member of a prison gang, the Institution Gang Investigator ("IGI") staff must present three different reliable sources of information indicating that the prisoner is a member or associate of a prison gang. These indicia are then reviewed by the SSU agents of the CDCR.

Plaintiff's amended complaint is now before the Court for review under 28 U.S.C. § 1915A, and, as mentioned above, he has also filed a motion for appointment of counsel.

## BACKGROUND

The following is background information is taken from the Court's review of Plaintiff's original complaint in its February 7, 2013 Order:

> On February 14, 2008, while Plaintiff was incarcerated at [North Kern State Prison ("NKSP")], he was improperly validated as a gang member. On March 26, 2008, Plaintiff was transferred to [the California Correctional Institution ("CCI")]. At CCI, the grounds for Plaintiff's validation as a gang member were reviewed and he was informed that "he was a threat to the safety of others and to the security of the institution." Plaintiff disputed the source items that were used to validate him as a gang member, but he was told they were "good enough to be used."
>
> On March 9, 2009, Plaintiff was transferred to PBSP. At an initial review of his file, PBSP employee "M.A. Cook" stated that the "ICC" was not responsible for "reviewing source items or their reliability" and that Plaintiff would be placed in the SHU, even though Cook could not explain why he was doing so. Compl. at 3D. Plaintiff alleges that Cook's actions violated his constitutional rights. In addition, Plaintiff alleges that "N. Grannis," who is a supervisor in charge of inmate appeals, should have been aware of and familiar with the agreement of September 23, 2004. Finally, Plaintiff alleges that the Chief of Inmate Appeals and the "Director" who "issued a memo dated May 10, 2005," are liable because they are responsible for the actions of their employees.[2]

(Feb. 7, 2013 Order at 2 (footnote in original).)

In its February 7, 2013 Order dismissing the complaint with leave to amend, the Court determined that Plaintiff had alleged a cognizable claim that he was denied a state-created liberty interest without due process against Defendant Cook. However, the Court "defer[ed] service of such claim until such time as Plaintiff has filed an amended complaint and the Court has had the opportunity to review the sufficiency of Plaintiff's amended claims." (Id. at 7.)

The Court dismissed with leave to amend Plaintiff's other claims, including:

(1) his due process claim against Defendants Grannis[3] and the Director of the CDCR because Plaintiff did not allege any facts linking these Defendants to any constitutional violation;

---

[2] The Court presumes that Plaintiff is referring to the Director of the [CDCR].

[3] The Court initially indicated that Plaintiff had listed Defendant Grannis and the "Chief of Inmate Appeals" as two separate Defendants. However, in his amended complaint, Plaintiff clarifies that they are, in fact, the same person.

(2) his Eighth Amendment claim because his bare allegation that he is subject to an indeterminate sentence in the SHU was insufficient to state such a claim; and

(3) his equal protection claim because he failed to alleged facts to support his claim that Defendants impermissibly validated him as a gang member based on his race and class. (Id. at 4-7.)

In his amended complaint, Plaintiff now specifies that he is challenging his placement and retention in administrative segregation in the SHU on the basis of a report predicated on alleged gang association with the Mexican Mafia ("EME") prison gang.  Plaintiff alleges that various officials at PBSP and the CDCR had him placed in long-term administrative segregation in the SHU without a fair hearing and on the basis of evidence that is unreliable and insufficient under the terms of the settlement agreement in Castillo v. Alameida, No. 94-2847 MJJ (PR) (N.D. Cal.).

Specifically, Plaintiff alleges the following in his amended complaint.  On December 12, 2002, Defendant Randolf "placed a 1030[4] in [Plaintiff's] C-file without placing a copy of the debriefing report of the inmate that provided the 'confidential information' in [Plaintiff's] C-file. . . ." (Id. at 12 (footnote added).)  Defendant Randolf "acted to retain Plaintiff in SHU based on information that didn't pertain to Plaintiff stemming from his earlier involvement with Plaintiff in a separate incident of 3-22-00."  (Am. Compl. at 13.)

On June 18, 2003, Defendant Marquez "placed a 1030 in [Plaintiff's] C-file . . . [and] the information relied on was uncooberated [sic] hearsay that cannot and does not identify acts, conduct, or gang activity performed by Plaintiff with no supporting documents."  (Id. at 13.)

On April 14, 2004, Defendant Lujan "placed a 1030 in [Plaintiff's] C-file . . . [and] the information relied on was exclusively based on hearsay never identifying specific gang activity or conduct performed by Plaintiff . . . ."  (Id. at 14.)

On March 28, 2005, Defendant Handley "placed a source item in [Plaintiff's] C-file . . . that does not show that Plaintiff received or attempted to receive communication with, nor tried to correspond with to promote or assist in any gang activity . . . ."  (Id. at 15.)

---

[4] CDCR form 1030 provides the basis for which confidential information used to confirm gang status was found to be reliable.

3

1   On February 6, 2008, Defendants Berhler, Fischer and Kingston "improperly vindicated" Plaintiff as a gang associate based on "items dated 3-22-00, 4-14-04 and 3-28-05 that should have been excluded per the Castillo Agreement of 9-23-04, i.e., information based solely on hearsay, source items older than 6 years old, use of source item claiming/alleged direct links to prison gang members/associates." (Id. at 7.)

After being transferred to PBSP on March 9, 2009, Plaintiff appeared before the Institution Classification Committee ("ICC") at PBSP and Defendant Cook, sitting as chairperson of the ICC, stated that the ICC was not responsible for "reviewing source items or their reliability" and that Plaintiff would be placed in the SHU, even though Defendant Cook could not explain such a placement. (Id. at 9.)

During Plaintiff's Unit Classification Committee ("UCC") hearing, Defendants Hutzell and Cox participated and "acted to retain Plaintiff in SHU based upon prison gang validation . . . ." (Id. at 11-12.) Plaintiff does not indicate the date of this UCC hearing; however, he attaches a copy of his March 23, 2010 CDCR form 128G,[5] indicating that Defendants Hutzell and Cox participated and retained Plaintiff in the SHU. (Id., Ex. 3B.)

Defendant Lewis sat as "chairperson at PBSP classification" during another ICC hearing and "acted to retain Plaintiff in SHU based upon prison gang validation." (Id. at 11.) While Plaintiff, again, does not indicate the exact date of this ICC hearing on his amended complaint, he attaches a copy of the his October 26, 2011 CDCR Form 128G, indicating that Defendant Lewis sat as chairperson and retained Plaintiff in the SHU. (Id., Ex. 3A.)

Plaintiff has denied being an EME associate or member. Plaintiff does have the option of "debriefing," which means that if he discloses information about his association with EME, and provides intelligence about the gang and its members, he will be sent back to the general prison population housing. Plaintiff has refused to do so, complaining that he does not have any information since he is not a prison gang member or associate. Plaintiff claims that Defendants Randolf, Marquez, Lujan, Handley, Berhler, Fischer, Kingston, Cook, Hutzell, Cox, and Lewis, are all liable because (1) the March 9, 2009 gang status review violated Plaintiff's Fourteenth

---

[5] CDCR form 128G is the form used to document ICC or UCC hearings.

4

Amendment rights, resulting in Plaintiff's placement in the SHU; (2) Plaintiff's retention in the SHU violates his right to free association and right to due process; (3) Defendants failed to train and/or failed to follow their own policies regarding gang management and validation; and (4) the hearing procedures utilized by Defendants violate state law and prison rules, as amended pursuant to a settlement agreement in Castillo.

In Plaintiff's amended due process claim against Defendants Grannis and Cate (the Director of the CDCR), Plaintiff attempts to allege facts linking these Defendants to a constitutional violation. Plaintiff claims that Defendants Grannis and Cate are both liable because of their involvement in the handling of his 602 inmate appeal. (Id. at 16-17.) Plaintiff also claims that these Defendants' "negligent supervision of prison officials further promoted Plaintiff'[s] constitutional deprivation." (Id.)

In amending his Eighth Amendment claim, Plaintiff claims that Defendants violated his Eighth Amendment rights by subjecting him to an "indeterminate sentence in the SHU." (Id. at 20.) He adds that being housed in the SHU has "an adverse affect [sic] on prisoners['] mental state and well being" because they are subjected to "sensory deprivation, disturbed sleep, weight loss due to lack of food . . . ." (Id. at 21.)

Finally, Plaintiff was directed to amend his equal protection claim to alleged facts to support his claim that Defendants impermissibly validated him as a gang member based on his race and class. In his amended complaint, Plaintiff states that the all the named Defendants' policy and practice of validating inmates as gang members is "in error and aimed mainly at one class of prisoner," namely "prisoners of Mexican descent, or Hispanic, primarily (and of mixed race) who associate through cultural similarities, geography and backgrounds." (Id. at 19.) Plaintiff claims that he is "one of those prisoners" and that "the labeling by the CDCR is done in a discriminatory manner." (Id.)

## DISCUSSION

### I. Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

5

§ 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). Pro se pleadings must be liberally construed, however. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

## II.   Legal Claims

### A.   Due Process and Equal Protection Claims

The decision to place and retain a prisoner in administrative segregation must comport with procedural due process only if the specific deprivation at issue constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Plaintiff's deprivation here -- a prolonged term of segregation in the SHU -- suggests sufficient severity to implicate procedural due process protection. Assuming that this is the case, Ninth Circuit law provides that Plaintiff was entitled to the following procedures before placement in the SHU: (1) an informal nonadversary hearing within a reasonable time after being segregated, (2) notice of the charges or the reasons segregation is being considered, and (3) an opportunity to present his views. See Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir 1986). There also must be "some evidence" to support the decision to segregate Plaintiff for administrative reasons, id. at 1104-04 (citing Superintendent v. Hill, 472 U.S. 445, 455 (1985)), and the evidence relied upon must have "some indicia of reliability," Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995). In view of the following, Plaintiff's allegations regarding placement and retention in administrative segregation in the SHU, when liberally construed, state a cognizable claim under § 1983 for denial of due process against Defendants Lewis, Cook, Randolph, Marquez, Lujan, Hutzell, and Cox at PBSP, and against Defendants Berhler, Fischer, and Kingston at the CDCR.

In his amended complaint, as mentioned above, Plaintiff alleges that Defendants have a

1 policy and practice of validating inmates as gang members, and once they are validated, are
2 segregated in the SHU indefinitely. Pursuant to this policy and practice, Plaintiff claims that
3 Hispanic inmates, like himself, are disproportionately targeted and validated as gang members based
4 upon their ethnicity. (Am. Compl. at 19.) Thus, according to Plaintiff, he was improperly identified
5 as a gang member and placed in the SHU indefinitely based on false and unreliable information,
6 including his Hispanic ethnicity, under this policy and practice. When liberally construed, Plaintiff's
7 allegations state a cognizable claim that the aforementioned Defendants -- in creating and
8 implementing this policy and practice -- violated his right, not only to due process, but also to equal
9 protection.

### B. Supervisory Defendants Cate and Grannis

11 Plaintiff sues Defendants Cate (CDCR Secretary) and Grannis (CDCR Chief of Inmate
12 Appeals) in their supervisory capacity. Plaintiff does not allege facts demonstrating that these
13 Defendants violated his federal rights; rather, he appears to allege that they are liable based on the
14 conduct of their subordinates. There is, however, no respondeat superior liability under § 1983
15 solely because a defendant is responsible for the actions or omissions of another. See Taylor v. List,
16 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor generally "is only liable for constitutional
17 violations of his subordinates if the supervisor participated in or directed the violations, or knew of
18 the violations and failed to act to prevent them." Id. A supervisor may also be held liable if he or
19 she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights
20 and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d
21 1435, 1446 (9th Cir. 1991) (en banc). "Vague and conclusory allegations of official participation in
22 civil rights violations are not sufficient to withstand a motion to dismiss." Ivey v. Bd. of Regents of
23 Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Where the allegations against supervisory
24 officials are simply "bald" or "conclusory" because they "are nothing more than a formulaic
25 recitation of the elements," the allegations are "not entitled to be assumed true." See Ashcroft, 556
26 U.S. at 681 (making distinction between "conceivable" and "plausible").

27 According to Plaintiff, Defendant Cate, as the CDCR Secretary, is "responsible for all
28 California prisons and the inmates in their custody." (Am. Compl. at 16.) Thus, Plaintiff alleges

7

1  that Defendant Cate "acts under the color of the law in his supervisory functions over PBSP and is
2  liable for the unconstitutional treatment of Plaintiff." (Id.)  Similarly, Plaintiff claims that Defendant
3  Grannis, as the CDCR Chief of Inmate Appeals, is "responsible for the CDCR 602 appeals process"
4  and "acts under color of law in his/her supervisory functions over all appeals and is liable for the
5  unconstitutional treatment of Plaintiff." (Id. at 17.)  Plaintiff adds that Defendant Grannis's
6  "negligent supervision of prison officials further promoted Plaintiff[']s constitutional deprivation."
7  (Id.)  Plaintiff does not allege whether either Defendant Cate or Defendant Grannis were at all
8  involved in his gang validation.  Instead, Plaintiff claims these supervisory Defendants should have
9  known because they "entered into an agreement to remedy the matter regarding the procedures to be
10 used relative to prison gang validation, SHU placement and retention.  (Castillo v. Alameida, et al.,
11 Cal. No. C94-2847.)"  (Id. at 18.)  Because none of Plaintiff's factual allegations relate to any action
12 individually performed by either Defendant Cate or Defendant Grannis, the supervisory liability
13 claims against them must be DISMISSED for failure to state a claim.  This dismissal is without
14 leave to amend because Plaintiff has already been given an opportunity to amend his supervisory
15 liability claim, but he failed to correct any deficiencies in his amended claim.

16   **C.**  **Claim Against Defendant Grannis Relating to the Grievance Process**

17   Plaintiff attempts to hold Defendant Grannis liable because she handled the third level
18 review of his 602 appeal relating to the alleged violations in this action; however, Defendant
19 Grannis's denial of his 602 appeal proves that she was "made aware of the violation and failed to
20 remedy [it]." (Id. at 17.)

21   No constitutional violation is shown based merely on the improper handling of an inmate
22 appeal.  Generally, the failure to grant an inmate's appeal in the prison administrative appeal system
23 does not amount to a due process violation.  There is no federal constitutional right to a prison
24 administrative appeal or grievance system for California inmates.  See Mann v. Adams, 855 F.2d
25 639, 640 (9th Cir. 1988); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996).  The denial of
26 an inmate appeal is not so severe a change in condition as to implicate the Due Process Clause itself
27 and the State of California has not created a protected interest in an administrative appeal system in
28 its prison.  California Code of Regulations, title 15 sections 1073 and 3084 grant prisoners in the

8

1  county jails and state prisons a purely procedural right: the right to have a prison appeal and set forth
2  no substantive standards.  A regulation that merely provides procedural requirements, even if
3  mandatory, cannot form the basis of a constitutionally cognizable liberty interest.  See Smith v.
4  Noonan, 992 F.2d 987, 989 (9th Cir. 1993); Antonelli, 81 F.3d at 1430 (prison grievance procedure
5  is procedural right that does not give rise to protected liberty interest requiring procedural
6  protections of Due Process Clause); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)
7  (prisoner's claimed loss of a liberty interest in the processing of his appeals does not violate due
8  process because prisoners lack a separate constitutional entitlement to a specific prison grievance
9  system).

10  Here, Plaintiff had no federal constitutional right to a properly functioning appeal system.
11  An incorrect decision on an administrative appeal or failure to process the appeal in a particular way
12  therefore did not amount to a violation of his right to due process.  Accordingly, Plaintiff's claim
13  against Defendant Grannis relating to the handling of his administrative appeals is DISMISSED for
14  failure to state a claim upon which relief and without leave to amend.

### D. Claims Against Defendant Handley Occurring at HDSP

16  Plaintiff names Defendant Handley, a sergeant at HDSP, as a Defendant in this action.
17  Plaintiff claims that Defendant Handley violated his constitutional rights on March 28, 2005 because
18  Plaintiff was retained in the SHU based on "source item" Defendant Handley placed in his C-file
19  "based on facts not in evidence without supporting documents."  (Am. Compl. at 16.)  If Plaintiff
20  wishes to bring such an action, venue is not proper in this district for such claims.  HDSP is located
21  in Lassen County, which is within the venue of the United States District Court for the Eastern
22  District of California.

23  When jurisdiction is not founded solely on diversity, venue is proper in the district in which
24  (1) any defendant resides, if all of the defendants reside in the same state, (2) the district in which a
25  substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of
26  property that is the subject of the action is situated, or (3) a judicial district in which any defendant
27  may be found, if there is no district in which the action may otherwise be brought.  See 28 U.S.C.
28  § 1391(b).  Venue may be raised by the court sua sponte where the defendant has not yet filed a

9

1  responsive pleading and the time for doing so has not run.  See Costlow v. Weeks, 790 F.2d 1486,
2  1488 (9th Cir. 1986).  Where a case is filed in the wrong venue, the district court has the discretion
3  either to dismiss the case or transfer it to the proper federal court "in the interest of justice."  See 28
4  U.S.C. § 1406(a).  Therefore, Plaintiff's claims against Defendant Handley are DISMISSED without
5  prejudice to Plaintiff bringing such an action in the proper venue.

### E.	Eighth Amendment Claim

In his original complaint, the Court found that Plaintiff's allegation that his retention in the SHU violates the Eighth Amendment, without more, does not state a claim.

In his amended complaint, Plaintiff again states a conclusory allegation that Defendants violated his Eighth Amendment rights by subjecting him to an "indeterminate sentence" in the SHU. (Id. at 20.)  However, as the Court has previously pointed out, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."  Hewitt v. Helms, 459 U.S. 460, 468 (1983); cf. Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (contemporary standards of decency are not violated by classification programs which pursue 'important and laudable' goals and are instituted under the state's authority to operate correctional facilities).  An indeterminate sentence in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment.  See Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual punishment).

Plaintiff attempts to amend his claim by alleging that being housed in the SHU has "an adverse affect" on him because he is subjected to "sensory deprivation, disturbed sleep, weight loss due to lack of food." (Am. Compl. at 21.)  However, Plaintiff again fails to name any individuals who allegedly subjected him to such deprivation.  Nor has Plaintiff alleged any facts showing that such actions were undertaken with deliberate indifference to his health or safety.  Moreover, the Ninth Circuit requires more than usual hardships associated with administrative segregation to state an Eighth Amendment violation.  See Toussaint v. Yockey, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984). Because Plaintiff has failed to correct the deficiencies of his Eighth Amendment claim, it is

DISMISSED without leave to amend.

### III.   Motion for Appointment of Counsel

Plaintiff's motion for appointment of counsel is DENIED for want of exceptional circumstances.  See Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997); see also Lassiter v. Dep't of Social Services, 452 U.S. 18, 25 (1981) (there is no constitutional right to counsel in a civil case).  The issues in this case are not particularly complex, and Plaintiff has thus far been able to adequately present his claims.  This denial is without prejudice to the Court's sua sponte appointment of counsel at a future date should the circumstances of this case warrant such appointment.

### CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.   Plaintiff's allegations regarding placement and retention in administrative segregation in the SHU at SBSP, when liberally construed, state a cognizable claim under § 1983 for denial of due process and equal protection against Defendants Lewis, Cook, Randolph, Marquez, Lujan, Hutzell, and Cox at PBSP, and against Defendants Berhler, Fischer, and Kingston at the CDCR.

2.   Plaintiff's supervisory liability claims against Defendants Cate and Grannis are DISMISSED for failure to state a claim and without leave to amend.

3.   Plaintiff's claim against Defendant Grannis relating to the handling of his administrative appeals is DISMISSED for failure to state a claim upon which relief and without leave to amend.

4.   Plaintiff's claims against Defendant Handley are DISMISSED without prejudice to Plaintiff bringing such an action in the United States District Court for the Eastern District of California.

5.   Plaintiff's Eighth Amendment claim is DISMISSED without leave to amend.

6.   The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the amended complaint and all attachments thereto (Docket No. 8) and a copy of this Order to **the following Defendants at PBSP -- Warden G. D. Lewis; Chief Deputy Warden M. A. Cook; Lieutenants**

**M. Randolph and R. S. Marquez; Correctional Officer M. Lujan; Correctional Counselor I T. Hutzell; and Correctional Counselor II N. Cox -- and against the following Defendants at CDCR in Sacramento --  OCS Chairperson Keri Berhler; OCS Reviewer Everett W. Fischer; and OCS Member Bryan Kingston.** The Clerk shall also mail a copy of the amended complaint and a copy of this Order to the State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

7. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

8. Defendants shall answer the amended complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

a. No later than **sixty (60) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the

events at issue.  A motion for summary judgment also must be accompanied by a Rand[6] notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion.  Woods v. Carey, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in Rand must be served concurrently with motion for summary judgment).  A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice.  Stratton v. Buck, 697 F.3d 1004, 1008 (9th Cir. 2012); Woods, 684 F.3d at 935 (notice requirement set out in Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003), must be served concurrently with motion to dismiss for failure to exhaust available administrative remedies).

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

  b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

  c. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your amended complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  Rand, 154 F.3d at 962-63.

---

[6] Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998).

Plaintiff also is advised that a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. You must "develop a record" and present it in your opposition in order to dispute any "factual record" presented by the defendants in their motion to dismiss. Wyatt, 315 F.3d at 1120 n.14. You have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents -- documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your amended complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. In considering a motion to dismiss for failure to exhaust, the court can decide disputed issues of fact with regard to this portion of the case. Stratton, 697 F.3d at 1008-09.

(The Rand and Wyatt/Stratton notices above do not excuse Defendants' obligation to serve said notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. Woods, 684 F.3d at 935.)

       d.    Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

       e.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

9.    Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

10.    All communications by Plaintiff with the Court must be served on Defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

11.    It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding pro se whose address changes

while an action is pending must promptly file a notice of change of address specifying the new address.  See L.R. 3-11(a).  The Court may dismiss without prejudice a complaint when: (1) mail directed to the pro se party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the pro se party indicating a current address.  See L.R. 3-11(b).

12. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

13. Plaintiff's motion for appointment of counsel is DENIED.

IT IS SO ORDERED.

DATED: 7/22/13

*[signature]*
SAUNDRA BROWN ARMSTRONG
United States District Judge

**United States District Court**
For the Northern District of California

1
2
3
4
5  UNITED STATES DISTRICT COURT
6  FOR THE
7  NORTHERN DISTRICT OF CALIFORNIA
8
9
10 CHRIS FERRERA,                                    Case Number: CV11-00019 SBA
11         Plaintiff,                                **CERTIFICATE OF SERVICE**
12   v.
13 G.D. LEWIS et al,
14         Defendant.                              /
15
16 I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.
17
18 That on July 23, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
19 located in the Clerk's office.
20
21
22 Chris C. Ferrera E-30526
   Pelican Bay State Prison
   P.O. Box 7500
23 Crescent City, CA 95530
24 Dated: July 23, 2013
                                                   Richard W. Wieking, Clerk
25                                                 By: Lisa Clark, Deputy Clerk
26
27
28

G:\PRO-SE\SBA\CR.11\Ferrera0019.service.wpd          16